VALEN MANUFACTURING COMPANY,
Plaintiff–Appellant,

v.

UNITED STATES of America,
Defendant–Appellee.

No. 95–3681.

United States Court of Appeals,
Sixth Circuit.

Argued May 20, 1996.

Decided July 31, 1996.

Stephen L. Kadish, David G. Lambert (argued and briefed), and Aaron H. Bulloff, Kadish, Hinkel & Weibel, Cleveland, OH, for plaintiff–appellant.

Annette G. Butler, Asst. U.S. Attorney, Cleveland, OH, Gary R. Allen, Acting Chief (briefed), Gilbert S. Rothenberg, and Alice L. Ronk (argued), U.S. Department of Justice, Appellate Section Tax Division, Washington, DC, for defendant–appellee.

Before: DAUGHTREY and MOORE, Circuit Judges; FORESTER, District Judge.*

DAUGHTREY, Circuit Judge.

In this tax case, the plaintiff, Valen Manufacturing Company, was forced to pay substantial penalties to the Internal Revenue Service for failure to file employment tax returns, to pay employment taxes, and to make timely deposits of those taxes. The delinquencies resulted when a long-time, otherwise valued bookkeeper failed to carry out her responsibilities with regard to the company's employment taxes and covered up the fact that the forms had not been filed or the checks deposited by doctoring the company's

---

* The Honorable Karl S. Forester, United States District Judge for the Eastern District of Kentucky, sitting by designation.

books. The company argued that the penalties should be forgiven because "reasonable cause" existed for the delinquencies. The district court granted summary judgment to the government. We find no error and affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Pursuant to applicable laws and regulations, Valen Manufacturing was required to withhold social security taxes and federal income taxes from its employees' wages. 26 U.S.C. §§ 3102(a) and 3402(a)(1). The amounts withheld were then to be deposited into a special trust fund for the benefit of the United States at approved banks during the appropriate calendar quarter. 26 U.S.C. §§ 7501(a) and 6302(c). In addition, Valen Manufacturing was required to file with the IRS every quarter a Form 941 detailing the amounts withheld from the employees and the taxes to be paid. 26 C.F.R. §§ 31.6011(a)–1(a)(1); 31.6011(a)–4(a)(1); 31.6071(a)–1(a)(1).

Valen Manufacturing entrusted these responsibilities to Joyce Csire, who was originally hired by the company in 1974 as a billing clerk, but who was promoted in 1978 to the position of office manager and bookkeeper. Csire stated in an affidavit that she would prepare the tax return forms, as well as the checks for the payroll tax payments, and present them to a company executive for review. Csire would then deposit the checks as required and file the appropriate returns. The company also contracted with Paytime, a company that actually prepared the payroll checks based upon figures provided by Csire; with Jack Landis, a financial consultant who met with Csire monthly and reviewed the journals, statements and ledgers of the company; and with an independent certified public accounting firm, Clifton, Gunderson & Co., which performed year-end reviews of the company's books sometime after the March 31 close of Valen Manufacturing's fiscal year.

Despite these layers of oversight and review, Csire failed to file the appropriate forms with the IRS and failed to deposit checks to cover Valen Manufacturing's tax liabilities beginning with the quarter ending March 31, 1986, without being detected. She was able to conceal the delinquencies from Landis and also averred that Valen Manufacturing's management was unaware of her transgressions. Nevertheless, during the 1987 annual audit by the outside accounting firm, the problem with the delinquent filings and payments finally came to light. At that time, Csire quit the company and Valen Manufacturing ordered that the books be reconstructed properly and that the appropriate payments of taxes, interest, and penalties be made to the IRS from funds on hand for that purpose.

After unsuccessfully seeking reimbursement from the IRS of the penalty payments made, Valen Manufacturing filed suit in federal district court seeking a refund of $81,420.84, plus interest, paid as a result of Csire's misfeasance, on the grounds that the company had "reasonable cause" for not filing its returns or making its quarterly payments. The government moved for summary judgment in its favor, however, and the matter was referred to a magistrate judge who recommended that the motion be granted. The district court adopted the magistrate judge's report and recommendation and entered judgment in favor of the United States. The company now appeals that judgment to this court.

## II. ANALYSIS

This court reviews the grant of summary judgment *de novo* using the same legal standard employed by the district court. *Wiley v. United States,* 20 F.3d 222, 224 (6th Cir.1994). Consequently, summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56; *American Cas. Co. v. FDIC,* 39 F.3d 633, 636 (6th Cir.1994).

In this case, the government accepts as true the *facts* alleged by Valen Manufacturing concerning the company's role in the filing of tax returns and payments. The only dispute before the court, therefore, involves the necessary elements of the taxpayer's legal defense to the IRS's assessment of penalties against it.

## A. *Scope of Exception to Assessment of Penalty*

Applicable provisions of the Internal Revenue Code call for the assessment of rather substantial penalties upon any taxpayer who fails to file a required return, 26 U.S.C. § 6651(a)(1), fails to pay the amount of tax due in a timely manner, 26 U.S.C. § 6651(a)(2), or fails to deposit the appropriate amount of tax into the government's trust fund account, 26 U.S.C. § 6656(a). Those penalties are explicitly waived, however, where "such failure[s are] due to reasonable cause and not due to willful neglect." *Id.* Thus, as explained by the Supreme Court, "the taxpayer bears the heavy burden of proving both (1) that the failure did not result from 'willful neglect,' and (2) that the failure was 'due to reasonable cause.'" *United States v. Boyle,* 469 U.S. 241, 245, 105 S.Ct. 687, 689–90, 83 L.Ed.2d 622 (1985).

"Willful neglect" was defined in *Boyle* as "a conscious, intentional failure or reckless indifference." *Id.* Even the government does not suggest in this case, however, that Valen Manufacturing's failure to abide by its statutory tax responsibilities was engendered by such neglect. Instead, the dispute on appeal revolves solely around the question of whether the company's failures to file returns and taxes and make appropriate deposits were due to "reasonable cause."

"Like 'willful neglect,' the term 'reasonable cause' is not defined in the Code, but the relevant Treasury Regulation calls on the taxpayer to demonstrate that [it] exercised 'ordinary business care and prudence' *but nevertheless was* 'unable to file the return within the prescribed time.'" *Id.* at 246, 105 S.Ct. at 690 (emphasis added) (quoting 26 C.F.R. § 301.6651–1(c)(1)). Similarly, 26 C.F.R. § 301.6651–1(c)(1) also provides that "[a] *failure to pay* will be considered to be due to reasonable cause to the extent that the taxpayer has made a satisfactory showing that [it] exercised ordinary business care and prudence in providing for payment of [its] tax liability *and was nevertheless either unable to pay the tax or would suffer an undue hardship ... if [it] paid on the due date."* (Emphasis added.)

In advancing its position on appeal, Valen Manufacturing argues that it did, in fact, exercise "ordinary business care and prudence" in providing for filing of its returns and payment of its tax liabilities. Specifically, the company contends that it did all it could to ensure compliance with appropriate regulations by requiring that Csire's actions be presented to management for review, by having payroll checks prepared by an outside company, by having monthly analyses of the company's financial situation by a consultant, and by contracting with an outside accounting firm for yearly scrutiny of company financial information.

Indeed, Valen Manufacturing garners some support for its position from the Fourth Circuit's decision in *Willis v. Commissioner of Internal Revenue,* 736 F.2d 134 (4th Cir. 1984). In *Willis,* the taxpayer, as he had done in previous years, hired an accounting firm to assist him in the preparation of his tax return. *Id.* at 138. After the return had been prepared, Willis signed and dated it and then gave it to his secretary-comptroller with directions to "draw and endorse a company check to cover his tax liability, withdraw that amount from his personal account, and then mail the return to the IRS." *Id.* Unfortunately, however, the return was subsequently mislaid and was not submitted in a timely fashion. The court, despite recognizing that most other circuits had construed the phrase "reasonable cause" quite narrowly, itself chose not to endorse the idea that applicable statutes and regulations "mandate a per se refusal to excuse any inadvertent errors." *Id.* at 139. Instead, the court stated:

By considering a taxpayer's past history of timely tax filings, a taxpayer's exercise of careful business prudence in contacting capable and bona fide assistance from tax experts if reasonably necessary, a taxpayer's full disclosure of all relevant tax information to that expert, and a taxpayer's diligent efforts to ensure that the preparation of the tax return is completed, a court can find that an inadvertent error resulting in a late filing constitutes reasonable cause for purposes of IRC § 6651(a)(1) while as-

suring itself that equity for all parties is done.

*Id.* at 139–40.

The decision in *Willis,* however, predates the Supreme Court's holding in *Boyle,* in which the Court recognized the non-delegable nature of the duty imposed upon taxpayers to make timely filings of returns and unambiguously concluded that "[t]he failure to make a timely filing of a tax return is not excused by the taxpayer's reliance on an agent, and such reliance is not 'reasonable cause' for a late filing under § 6651(a)(1)." *Boyle,* 469 U.S. at 252, 105 S.Ct. at 693.[1]

Moreover, both the *Willis* decision and the arguments of the taxpayer in this case ignore the fact that the exercise of ordinary business care and prudence is only one element of the "reasonable cause" necessary to excuse penalty assessments for transgressions of the tax laws. In order to qualify for such relief, Valen Manufacturing must also satisfy those portions of the relevant regulations that require a taxpayer to show that it has been rendered unable to meet its responsibilities *despite* the exercise of such care and prudence. *See* 26 C.F.R. § 301.6651–1(c)(1).

No such disability has been established in this case. In fact, Valen Manufacturing concedes that, upon discovery of the failures of Csire to file returns, pay taxes, and make deposits, the company was able to forward immediately to the IRS the necessary payments, including penalties. Similarly, in *Conklin Bros. of Santa Rosa, Inc. v. United States,* 986 F.2d 315 (9th Cir.1993), the Ninth Circuit found no reason to excuse the taxpayer from liability for penalties for late filings, payments, and deposits. Conklin Bros. had promoted Diana Stornetta, an accounts payable clerk, to the position of office manager/controller. Although Stornetta performed her new job admirably so that close supervision of her payroll tax duties was no longer required, the employee still reported to the company president and met with independent accountants each month and at the close

of the year. *Id.* at 315–16. Nevertheless, she was able to hide for two years her failure to file proper payroll tax returns and make appropriate payments to the IRS. Upon Stornetta's resignation, the deficiencies were discovered and the required payments were made. Like Valen Manufacturing, however, Conklin Bros. sought a refund of the assessed penalty payments on the grounds that it had exercised ordinary business care and prudence in supervising its employee and that, as a result, it had reasonable cause for the delinquent payments and filings.

The Ninth Circuit refused the company's request, reemphasizing the lesson of *Boyle* that, because corporations act only through their employees and agents, they "cannot *rely* upon those agents or employees, acting within the scope of authority, to escape responsibility for the nonperformance of nondelegable tax duties." *Conklin Bros.,* 986 F.2d at 318 (emphasis in original). Rather, the taxpayer must establish that it has become disabled as a result of the actions or events leading to the dereliction of its duties. Because Conklin Bros. could not make such a showing, the court concluded that the taxpayer did not have reasonable cause to avoid the late penalty. *Id.* at 319.

Valen Manufacturing argues, in the alternative, that it *was* disabled by Csire's circumvention of the institutional controls established to effectuate payroll tax payments and reporting. In *Boyle,* however, the Supreme Court hinted that such disability must result from circumstances beyond the taxpayer's control (*e.g.,* postal delays, illness), not simply the "taxpayer's *reliance* on an agent employed by the taxpayer." *Boyle,* 469 U.S. at 248 n. 6, 105 S.Ct. at 691 n. 6 (emphasis in original). From a policy standpoint, such a requirement is eminently reasonable. First, as noted by the Supreme Court in *Boyle,* "a taxpayer should not be penalized for circumstances beyond his control." *Id.* Despite the lengths to which Valen

---

1. In this appeal, Valen Manufacturing makes the curious argument that *Boyle*'s statements regarding "reasonable cause" under § 6651(a)(1) do not apply to the company's other contentions concerning the payment of taxes under § 6651(a)(2), or the deposit of employee tax payments under § 6656(a). Such an argument is patently without merit. Although *Boyle* involved only a § 6651(a)(1) violation, the language of the "reasonable cause" exceptions in §§ 6651(a)(2) and 6656(a) is identical and should be given the same construction.

Manufacturing went to ensure proper compliance with the tax laws, however, the fact remains that executive officers of the company did retain both oversight of Csire's work and ultimate responsibilities for tax liabilities. The circumstances resulting in the penalty assessment against Valen Manufacturing, therefore, were not beyond the taxpayer's control.

By contrast, in *In the Matter of American Biomaterials Corp.,* 954 F.2d 919 (3d Cir. 1992), the Third Circuit affirmed a grant of relief to a corporate taxpayer who had been rendered "disabled" by the embezzlement of corporate officers. Because the criminal actors in that case, the corporation's CEO and Chairman of the Board and its CFO and treasurer, were the very two individuals with ultimate control over the company's taxpaying activities, the court was willing to conclude that the crimes committed by those individuals actually incapacitated the taxpayer and rendered it, despite any efforts it could have undertaken, unable to fulfill its duties under the tax code. *Id.* at 927.

The second reason for insisting that any disability forced upon a taxpayer result from a force beyond the taxpayer's control is simply to encourage compliance with our nation's self-reporting tax system. Forgiveness of penalty assessments levied against taxpayers who could exert greater controls and exercise greater levels of personal responsibility would only encourage late filings and payments to the IRS. As noted by the Supreme Court in *Boyle,* "[p]rompt payment of taxes is imperative to the Government, which should not have to assume the burden of unnecessary ad hoc determinations." *Boyle,* 469 U.S. at 249, 105 S.Ct. at 691–92.

### B. *Reliance Upon Internal Revenue Manual*

■ In a final attempt to secure forgiveness of the penalty assessments, Valen Manufacturing argues that the IRS's own *Internal Revenue Manual* suggests that the situation present in this case might justify a finding of reasonable cause for the delinquent tax filings and payments. The provisions of the manual, however, only "govern the internal affairs of the Internal Revenue Service. They do not have the force and effect of law." *United States v. Horne,* 714 F.2d 206, 207 (1st Cir.1983) (quoting *Einhorn v. DeWitt,* 618 F.2d 347, 350 (5th Cir. 1980)). *See generally Reich v. Manganas,* 70 F.3d 434, 437 (6th Cir.1995) ("Internal operating manuals ... do not carry the force of law, bind the agency, or confer rights upon the regulated entity."). This argument is, therefore, also without merit.

### III. *CONCLUSION*

In the preamble to our federal constitution, the framers stated their intent to create a government charged with the responsibility to "establish justice, insure domestic tranquility, provide for the common defense, promote the general welfare, and secure the blessings of liberty to ourselves and our posterity." In order to accomplish those goals, however, the federal government is forced to levy taxes upon the citizenry. In most instances, the taxpayers themselves bear the duty of reporting and paying the appropriate amounts. Consequently, court decisions interpreting tax laws and regulations have generally concluded that a taxpayer's failure to report or pay promptly may not be excused simply because the duties have been delegated to an agent or another third party.

Nevertheless, recognition of the harsh realities of everyday living has led the government to excuse penalties assessed for late tax filings and payments in some cases upon a showing of reasonable cause for the delinquency. Such a showing, however, requires both the exercise of ordinary business care and prudence *and* a resulting inability to pay the amount due or evidence of undue hardship if the liability were to be paid by the due date. Although Valen Manufacturing exercised ordinary business care and prudence in establishing its payroll tax reporting and payment system, the corporation could not produce evidence in this case that it was *necessarily* incapacitated from complying with tax laws as a result of the actions of an agent of the organization.

We conclude that the judgment of the district court upholding the assessment of penalties for failure to comply with tax report-

ing, payment, and deposit requirements must be **AFFIRMED**.