**HUFFMAN, CARTER & HUNT, INC., Plaintiff,**

v.

**UNITED STATES of America, et al. Defendants.**

No. 1:03–CV–00046.

United States District Court, S.D. Ohio, Western Division.

April 6, 2004.

Howard S. Levy, Phillips Law Firm, Cincinnati, OH, for Plaintiff.

Alejandro L. Bertoldo, U.S. Department of Justice, Washington, DC, Jan Martin Holtzman, Department of Justice, Cincinnati, OH, for Defendants.

## ORDER

SPIEGEL, Senior District Judge.

On January 16, 2003, Plaintiff Huffman, Carter & Hunt, Inc. filed the instant case pursuant to 26 U.S.C. § 6330(d), appealing a due process hearing determination that sustained the government's proposed levy to collect past-due payroll taxes (doc. 1). On May 27, 2003, Defendant United States of America moved this Court to summarily affirm the IRS Appeals Officer's determination sustaining the levy (doc. 5). On July 10, 2003, Plaintiff responded and filed a cross-motion for summary judgment (doc. 8). No subsequent briefing was filed by either party. The time for response having passed, the motions are now ripe for decision. For the following reasons, Plaintiff's motion will be denied, and Defendant's motion will be granted.

## I. RELEVANT FACTUAL BACKGROUND AND PROCEDURAL POSTURE

The parties have stipulated to all facts relevant to the instant dispute and motions; accordingly, all facts stated by the Plaintiff are presumed to be true. They may be fairly summarized as follows. Plaintiff is a franchisee operating a number of stores under the General Nutrition Stores moniker. From 1993 through 1997, Plaintiff contracted with the publicly-held company Automatic Data Processing to perform its payroll processing and fulfill its employment tax filing and payment obligations. As part of this agreement, ADP regularly drafted checks from Plaintiff's bank account to pay Plaintiff's employees and to remit payment to the IRS to satisfy its employee withholding obligations under the federal tax laws. This arrangement is standard and customary in payroll operations and is, in fact, prescribed and accepted by Defendant Internal Revenue Service (the "IRS"). In so doing, ADP did not grant the Plaintiff access to their books and records, enabling Plaintiff to conduct audits and exercise control over the use of its employee withholding escrows. Rather, Plaintiff used ordinary business care and prudence in retaining the outside payroll processing firm to fulfill these obligations on its behalf.

At some point, General Nutrition Stores' corporate offices recommended that Plaintiff consolidate these payroll services with the accounting functions already handled by its outside bookkeeper, John Governor, doing business as Comprehensive Business Services. Although Plaintiff transferred these functions to Governor's organization, the process at issue remained unchanged. Governor was granted limited authority to draft checks on Plaintiff's bank account for payment of its employee obligations, including satisfaction of its employee withholding obligations to the IRS. Furthermore, the Plaintiff routinely set aside employee withholding funds for Governor to draft against and remit to the IRS as required.

During 1998, Governor fulfilled these obligations on Plaintiff's behalf. Beginning in January 1999, however, Governor began embezzling Plaintiff's escrowed employee tax withholdings and failed to remit any of the required amounts to the IRS for the quarters ending March 31, 1999, June 30, 1999, September 30, 1999, and December 31, 1999. Plaintiff learned of the embezzlement when the IRS contacted it regarding its unpaid employment tax liabilities for the entire 1999 tax year, and it immediately terminated Governor's services. It is uncontested that, prior to these incidents,

Plaintiff enjoyed an unblemished history of compliance with its employment tax deposits and obligations. It is also undisputed that Plaintiff had in fact set aside and escrowed its employee tax deposits during the 1999 tax year.

Ultimately, Governor pled no contest to embezzlement charges and entered into a restitution agreement obligating him to repay the embezzled funds over 36 months in equal installments of $3,540 per month. He commenced making payments in July 2002, and he has made each payment from July through December 2002 without exception. Upon receipt of each monthly installment, the Plaintiff has remitted the funds to the IRS to satisfy these past liabilities, and Plaintiff has averred that it will continue to do so until the entire liability is satisfied.

In the interim, however, the IRS took steps to secure recovery of the past-due employment tax liabilities. On January 17, 2001, the IRS issued Plaintiff a Final Notice of Intent to Levy and Notice of Your Right to a Hearing for Form 941 employment tax liabilities for the entire 1999 tax year at issue. Plaintiff filed a timely Request for Collection Due Process Hearing, seeking to halt the IRS's levy efforts and receipt of an offer in compromise to abate all penalties and to allow them to remit the past-due amounts as Governor fulfilled his restitution obligations. The IRS, in addition to seeking payment of the past-due employee withholding portions, also sought the imposition of penalties for failure to file and failure to pay provided by Internal Revenue Code sections 6651(a)(1) and (2), respectively. Plaintiff, however, sought that these penalties be abated in its offer in compromise, contending that the actions of its third-party bookkeeper constituted activities generally beyond the control of the taxpayer, warranting abatement of the penalty. On December 18, 2002, the IRS determined that the embezzlement did not constitute reasonable cause for its failure to file and pay employee withholding sums in a timely manner and that, as a result, the Plaintiff failed to present either a valid offer in compromise or a viable alternative to forced collection. The IRS upheld the levy. On January 16, 2003, Plaintiff filed the instant complaint alleging that the IRS Appeals Officer abused his discretion in failing to abate the penalties and in sustaining the levy for collection of these unpaid amounts and penalties.

## II. LAW AND DISCUSSION

As pleaded, this appeal presents two somewhat interrelated claims, both premised on allegations that the IRS Appeals Officer abused his discretion. First, the Plaintiff alleges that the IRS Appeals Officer abused his discretion in refusing to abate the penalties for failure to pay and deposit the employment tax withholding at issue. Second, the Plaintiffs contend that the officer abused his discretion in rejecting Plaintiff's offer in compromise to pay only the past-due amount of taxes owed as restitution was received from Governor. In large part, however, the determination of whether the levy was properly sustained is dependent upon whether the Plaintiff would be responsible for the proposed penalties and, as a result, whether Plaintiff's proposed offer in compromise to pay the amounts at issue without the associated penalties was therefore reasonable. The Court therefore begins its analysis with this issue.

### A. Abatement of Penalties

The IRS Appeals Officer in this case upheld the imposition of penalties provided by the Internal Revenue Code applicable to taxpayers who fail to file and pay their employee withholding obligations. The

penalties at issue are detailed in 26 U.S.C. § 6651(a), which provides, in relevant part:

(a) **Addition to the tax.**—In case of failure—

(1) to file any return required under authority of subchapter A of chapter 61 (other than part III thereof) ...on the date prescribed therefor (determined with regard to any extension of time for filing), unless it is shown that such failure is due to reasonable cause and not due to willful neglect, there shall be added to the amount required to be shown as tax on such return 5 percent of the amount of such tax if the failure is for not more than 1 month, with an additional 5 percent for each additional month or fraction thereof during which such failure continues, not exceeding 25 percent in the aggregate;

(2) to pay the amount shown as tax on any return specified in paragraph (1) on or before the date prescribed for payment of such tax (determined with regard to any extension of time for payment), unless it is shown that such failure is due to reasonable cause and not due to willful neglect, there shall be added to the amount shown as tax on such return 0.5 percent of the amount of such tax if the failure is for not more than 1 month, with an additional 0.5 percent for each additional month or fraction thereof during which such failure continues, not exceeding 25 percent in the aggregate

26 U.S.C. § 6651(a)(1), (2). It is undisputed that Plaintiff failed to file and pay the 1999 employment withholding taxes at issue. Accordingly, if it is to avoid imposition of the penalties, the Plaintiff "bears the heavy burden of proving both (1) that the failure did not result from wilful neglect, and (2) that the failure was due to reasonable cause." *United States v. Boyle*, 469 U.S. 241, 245, 105 S.Ct. 687, 83 L.Ed.2d 622 (1985), *quoting in part* 26 U.S.C. § 6651(a) (internal quotation marks omitted). The associated regulations provide some insight into what the Treasury deems "reasonable cause" under both penalty provisions:

(c) Showing of reasonable cause.... If the taxpayer exercised ordinary business care and prudence and was nevertheless unable to file the return within the prescribed time, then the delay is due to a reasonable cause. A failure to pay will be considered to be due to reasonable cause to the extent that the taxpayer has made a satisfactory showing that he exercised ordinary business care and prudence in providing for payment of his tax liability and was nevertheless either unable to pay the tax or would suffer an undue hardship (as described in § 1.6161–1(b) of this chapter) if he paid on the due date. In determining whether the taxpayer was unable to pay the tax in spite of the exercise of ordinary business care and prudence in providing for payment of his tax liability, consideration will be given to all the facts and circumstances of the taxpayer's financial situation....

26 C.F.R. § 301.6651–1(c)(1).

■ The United States insists that the facts of the instant case fail as a matter of law to meet the threshold of "reasonable cause" as established by the Sixth Circuit in *Valen Manufacturing Co. v. United States*, 90 F.3d 1190 (6th Cir.1996). In *Valen*, a corporation assigned the tasks of filing and paying its employee withholding taxes to its office manager and bookkeeper, who was supervised by a number of other corporations and individuals, including the corporation's certified public accountants. "Despite these layers of oversight and review," the manager failed to file and pay the withholding tax liabilities and to conceal these omissions for over one year until, upon audit, "the problem with the delinquent filings and payments finally

came to light." *Valen*, 90 F.3d at 1191. The IRS assessed failure to file and pay penalties pursuant to § 6651, and the company sued for abatement of the penalties, averring that it exercised "ordinary business care and prudence in providing for the filing of its returns and payment of its tax liabilities" by establishing oversight of the manager's actions and that, as a result, relief was mandated by the statute. *Valen*, 90 F.3d at 1192 (internal quotation marks omitted).[1]

■ The Sixth Circuit affirmed the grant of summary judgment to the IRS upholding imposition of the penalties. In so doing, it relied on the United States Supreme Court's decision in *U.S. v. Boyle*, 469 U.S. 241, 105 S.Ct. 687, 83 L.Ed.2d 622 (1985), in which the high Court held that a taxpayer's "failure to make a timely filing of a tax return is not excused by the taxpayer's reliance on an agent, and such reliance is not reasonable cause for a late filing under § 6651(a)(1)." *Boyle*, 469 U.S. at 252, 105 S.Ct. 687 (internal quotation marks omitted). The United States contends that this language is controlling in the instant case: Despite Plaintiff's protestations to the contrary, its attempts to delegate the responsibility for filing and paying these taxes to Governor, as its agent, is simply insufficient to constitute "reasonable cause" justifying relief from the penalties as a matter of law.

In response, the Plaintiff attempts to distinguish the facts of the instant case from those in *Valen* and *Boyle*, and it cites

a number of cases in support. Primarily, it depends upon the United States Court of Appeals for the Third Circuit's decision in *In re American Biomaterials Corp.*, 954 F.2d 919 (3d Cir.1992). In this case, the corporation—as here—had failed to file and pay employment taxes. This shortcoming, however, was the result of the CEO's and CFO's fraud and embezzlement, rather than that of a clerk or lower-level administrative employee. Nonetheless, the IRS sought penalties under 26 U.S.C. §§ 6651 and 6656. The Third Circuit held that, on the facts of the case, the corporation's failure was a result of reasonable cause. In so holding, the Third Circuit placed a substantial amount of weight on the implications of the agency relationship between a corporation and its employees. It held that the two officers' intent and efforts to embezzle the monies, because they were outside the scope of their apparent authority, could not be imputed to the organization. Accordingly, these actions did not constitute the type of wilful neglect that justified the imposition of penalties.[2]

However—and very significantly—the Third Circuit did not reach the second part of the inquiry: whether the taxpayer's failure to file and/or pay the withholding was the result of reasonable cause. Rather, it was unnecessary for it to do so, as the government had waived the issue by failing to argue this element of the test below. Even so, the Third Circuit noted:

> In sum, we hold that when the officers of a corporation commit criminal acts against the corporation, they do so in the absence of apparent authority. Where their crimes are proved to be the cause of the corporation's failures to fulfill its duties under the tax code, as the district court found, the corporation is not automatically vicariously responsible for the penalties resulting from those failures.
>
> *American Biomaterials*, 954 F.2d at 928.

1. The United States also notes that, in *Valen*, the Sixth Circuit acknowledged *Boyle*'s dictate that a taxpayer seeking abatement of penalties under the statute must not only show reasonable cause but also that the taxpayer was *"unable* to meet its responsibilities *despite* the exercise of such [ordinary business] care and prudence." *Valen*, 90 F.3d at 1193.

2. The Third Circuit expressed that:

If a corporation has lax internal controls or fails to secure competent external auditors to ensure the filing of timely tax returns and deposit and payment of taxes, it fails to show reasonable cause or absence of willful neglect and is itself liable for statutory penalties, notwithstanding its lack of vicarious liability for the criminal actions of its agents.

*American Biomaterials,* 954 F.2d at 928. In sum, this case lends the Plaintiff no aid. While it may arguably address whether the Plaintiffs' failure to pay under these circumstances constitutes sanctionable willful conduct, it utterly fails to support any argument that the malfeasance of Plaintiff's agent constitute "reasonable cause" under the statute warranting abatement of the penalties.

Indeed, upon consideration, it seems clear that the United States Supreme Court intended for the rule in *Boyle* to encompass the facts presented by the instant case. In articulating the rule, the Court held:

> We need not dwell on the similarities or differences in the facts presented by the conflicting holdings. The time has come for a rule with as "bright" a line as can be drawn consistent with the statute and the implementing regulations. Deadlines are inherently arbitrary; fixed dates, however, are often essential to accomplish necessary results. The Government has millions of taxpayers to monitor, and our system of self-assessment in the initial calculation of a tax simply cannot work on any basis other than one of strict filing standards. Any less rigid standard would risk encouraging a lax attitude toward filing dates. Prompt payment of taxes is imperative to the Government, which should not have to assume the burden of unnecessary ad hoc determinations.

> .    .    .    .    .

This case is not one in which a taxpayer has relied upon the erroneous advice of counsel concerning a question of law. Courts have frequently held that "reasonable cause" is established when a taxpayer shows that he reasonably relied on the advice of an accountant or attorney that it was unnecessary to file a return, even when such advice turned out to have been mistaken.

> .    .    .    .    .

When an accountant or attorney *advises* a taxpayer on a matter of tax law, such as whether a liability exists, it is reasonable for the taxpayer to rely on that advice. Most taxpayers are not competent to discern error in the substantive advice of an accountant or attorney. To require the taxpayer to challenge the attorney, to seek a "second opinion," or to try and monitor counsel on the provisions of the Code himself would nullify the very purpose of seeking the advice of a presumed expert in the first place. "Ordinary business care and prudence" do not demand such actions.

By contrast, one does not have to be a tax expert to know that tax returns have fixed filing dates and that taxes must be paid when they are due. In short, tax returns imply deadlines. Reliance by a lay person on a lawyer is of course common; but that reliance cannot function as a substitute for compliance with an unambiguous statute. . . .

It requires no special training or effort to ascertain a deadline and make sure that it is met. The failure to make a timely filing of a tax return is not excused by the taxpayer's reliance on an agent, and such reliance is not "reasonable cause" for a late filing under § 6651(a)(1).

*Boyle,* 469 U.S. at 249–252, 105 S.Ct. 687 (internal citations omitted) (emphasis in original). The Sixth Circuit embraced

such a broad reading in *Valen*, holding that a "reasonable cause" justifying relief under the statute must necessarily disable the corporation from complying with the statute, rather than arise merely as a result of the "taxpayer's reliance on an agent employed by the taxpayer." *Valen*, 90 F.3d at 1193 (emphasis omitted). As the Sixth Circuit noted:

> From a policy standpoint, such a requirement is eminently reasonable. First, as noted by the Supreme Court in *Boyle*, "a taxpayer should not be penalized for circumstances beyond his control." Despite the lengths to which Valen Manufacturing went to ensure proper compliance with the tax laws, however, the fact remains that executive officers of the company did retain both oversight of [the agent's] work and ultimate responsibilities for tax liabilities. The circumstances resulting in the penalty assessment against Valen Manufacturing, therefore, were not beyond the taxpayer's control.

*Valen*, 90 F.3d at 1193–94 (internal citation omitted). Similarly, even accepting as true Plaintiff's protestations that it exercised prudence in selecting and monitoring Governor as he performed these services on its behalf, it is insufficient to warrant abatement of the penalties levied in this case.[3]

## B. *Imposition of Levy*

The Plaintiff also contends that the IRS Appeals Officer abused his discretion in failing to accept its proposed offer in compromise and in sustaining the levy to collect on the unpaid taxes at issue. Neither party advances any caselaw or other authority in support of its proposition, and the Complaint and subsequent briefing provides only the most scant details as to the underlying facts surrounding the levy and offer in compromise. Indeed, the majority of the claims in the Complaint surround the IRS's refusal to abate the penalties already discussed. The only direct averment in the Complaint related to the levy action states, in full, that the IRS "[a]bused its discretion in determining that the levy action balances the need for efficient collection of taxes with the legitimate concern of the taxpayer that any collection action be no more intrusive than necessary" (doc. 1). It is clear that the Plaintiff protested the collection efforts in a Taxpayer Due Process Hearing pursuant to 26 U.S.C. § 6330, and there is no contention that the IRS failed to comply with any of the procedural prerequisites to imposition of a levy under 26 U.S.C. § 6331.

---

**3.** It is worth noting that the *Valen* court distinguished *American Biomaterials* as a limited case where the Third Circuit was willing to find incapacity "[b]ecause the criminal actors in that case, the corporation's CEO and Chairman of the Board and its CFO and treasurer, were the very two individuals with ultimate control over the company's taxpaying activities." *Valen*, 90 F.3d at 1194. In such circumstances, the Third Circuit "was willing to conclude that the crimes committed by those individuals actually incapacitated the taxpayer and rendered it, despite any efforts it could have undertaken, unable to fulfill its duties under the tax Code." *Id.*

First, despite recognizing that the Third Circuit had made such a finding in *American Biomaterials*, the Sixth Circuit did not indicate whether such a distinction was appropriate under the statute. Second, it clearly indicated that facts of *American Biomaterials* were distinguishable from those in *Valen* and, by comparison, those of this case. Finally, the *Valen* opinion possibly mischaracterized the holding of the *American Biomaterials* case. As noted above, the Third Circuit only analyzed the officers' conduct to determine whether it could be considered willful conduct properly imparted to the corporation. The Third Circuit simply never reached the reasonable cause prong of the analysis. Furthermore, the Third Circuit unambiguously indicated that such wrongdoing would not constitute reasonable cause excusing the taxpayer from liability for the associated penalties.

Attached to the Complaint, however, is the Notice of Determination issued by the IRS Appeals Office. With respect to the offer in compromise, the Appeals Office indicated that the Plaintiff failed to suggest a payment plan that included the penalty amounts and that it otherwise declined to make any commitment to tender funds that it had not first received as restitution from Governor. The IRS, despite noting that it "does appear that the funds [at issue] may be collected without levy," found that "no acceptable alternative to a levy was raised during the consideration of this case" and, on that ground, sustained the levy (doc. 1). Despite arguing in its motion for summary judgment that the IRS Appeals Officer abused his discretion in doing so and in failing to agree to an offer in compromise, it offers absolutely no information as to the nature of any proposed offer in compromise. Furthermore, it is undisputed that the Plaintiff, in proposing to tender the amounts due and owing on the tax deficiency as restitution is received from Governor, has made absolutely no proposal as to how or when any penalties should be paid. Having found that the Plaintiff is not entitled to abatement of the penalties, the Court finds—with no other evidence before it—that the IRS Appeals Officer's rejection of an offer in compromise "where plaintiff would not pay the assessed penalties" is not an abuse of discretion (doc. 5).

## III. CONCLUSION

For the foregoing reasons, the United States' Motion to Summarily Affirm on the Pleadings (doc. 5) is GRANTED. The Plaintiff's Reply to United States' Motion to Summarily Affirm on the Pleadings and Cross–Motion for Summary Judgment (doc. 8) is DENIED. The Clerk is hereby ORDERED to enter judgment in this case for the Defendants as to all claims.

SO ORDERED.

## JUDGMENT IN A CIVIL CASE

Decision by Court: This action came to trial or hearing before the Court. The issues have been tried or heard and a decision has been rendered.

## IT IS ORDERED AND ADJUDGED

...that for the foregoing reasons, the United States' Motion to Summarily Affirm on the Pleadings (doc. 5) is GRANTED. The Plaintiff's Reply to United States' Motion to Summarily Affirm on the Pleadings and Cross–Motion for Summary Judgment (doc. 8) is DENIED. The Clerk is hereby ORDERED to enter judgment in this case for the Defendants as to all claims.

Pursuant to S.D. Ohio Civ. R. 79.2(a) and (b), all models, diagrams, depositions, photographs, x-rays and other exhibits and materials filed or offered in evidence shall be withdrawn by counsel without further Order within six (6) months after final termination of the action. All materials not withdrawn shall be disposed of by the Clerk as waste.