**UNITED STATES of America,
Plaintiff,**

v.

**Mary J. DONALDSON, Defendant.**

**No. 3:05CR122(2).**

United States District Court,
S.D. Ohio,
Western Division.

June 27, 2006.

---

Dwight K. Keller, United States Attorney's Office, Dayton, OH, for Plaintiff.

DECISION AND ENTRY OVERRULING MOTION OF DEFENDANT MARY DONALDSON TO SUPPRESS STATEMENTS (DOC. # 39); DECISION AND ENTRY OVERRULING, AS MOOT, GOVERNMENT'S MOTION FOR PROTECTIVE ORDER (DOC. # 42); DECISION AND ENTRY SUSTAINING MOTION OF DEFENDANT MARY DONALDSON FOR DISCOVERY (DOC. # 61); CONFERENCE CALL SET

RICE, District Judge.

Defendant Mary Donaldson ("Donaldson") is charged in the Indictment (Doc. # 7), along with Co–Defendants Randall Davidson ("Davidson"), Michael McWhirter ("McWhirter") and Jocelyn Hammond ("Hammond"), with one count of conspiracy to commit mail and wire fraud, in violation of 18 U.S.C. § 371 (Count 1); five counts of mail fraud, in violation of 18 U.S.C. § 1341 (Counts 3–7); and one count of conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h) (Count 9). Donaldson and Davidson are also charged with one count of bankruptcy fraud, in violation of 18 U.S.C. § 158(2) (Count 2); and one count of making a false statement on a loan application, in violation of 18 U.S.C. § 1014 (Count 12). This case is now before the Court on Donaldson's Motion to Suppress Statements (Doc. # 39).[1] On February 12, 2006, this Count conducted an oral and evidentiary hearing on that motion, and the parties have filed their post-hearing memoranda. *See* Docs. ## 60, 63 and 64. The Court now rules upon Donaldson's request to suppress her statements to law enforcement officials.[2]

On August 27, 2004, Special Agent Richard Fanelli ("Fanelli") of the Federal Bureau of Investigation ("FBI") interviewed Donaldson at the Cheyenne, Wyoming, office of the FBI. Fanelli conducted that interview as a result of a request by Special Agent Steven Darragh ("Darragh") of the Dayton FBI office. At that time, the Dayton office of the FBI was conducting a joint investigation with the Criminal Investigation Division ("CID") of the Internal Revenue Service ("IRS") into the activities of Donaldson, Davidson and a related mortgage company.[3] Prior to that interview, Donaldson was not advised of her rights, nor was she informed that the investigation being conducted was examining her activities. Donaldson was not, however, in custody during that interview. After the interview, Donaldson left the FBI office.

On June 24, 2005, Donaldson was interviewed again in the Cheyenne FBI office. On that occasion, the interview was conducted by Special Agent Marcia Gross

---

1. Also pending is Donaldson's Motion for Discovery (Doc. # 61), with which she seeks to discover written summaries of the testimony of any expert witnesses the Government intends to call in its case-in-chief. In accordance with Rule 16(a)(1)(G) of the Federal Rules of Criminal Procedure, the Government is obligated to provide, at the defendant's request, "a written summary of any testimony that the government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its case-in-chief at trial." Moreover, the written summary "must describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications." *Id.* The Government has not responded to this motion. In addition, the motion is well taken. Accordingly, the Court sustains Donaldson's Motion for Discovery (Doc. # 61).

2. In response to Donaldson's Motion to Suppress Statements (Doc. # 39), the Government filed a Motion for Protective Order (Doc. # 42), arguing that an evidentiary hearing on Donaldson's motion was not necessary. Given that the hearing has occurred, the Court overrules, as moot, the Government's Motion for Protective Order (Doc. # 42).

3. The investigation of the CID was focused at that time upon Davidson.

("Gross") of the CID and FBI Special Agent Tim Ferguson ("Ferguson"). At the time of that interview, the investigation of Davidson, Donaldson and the related mortgage company was continuing.[4] As before, Donaldson was not advised, before the interview, of her rights, nor was she informed that the investigation being conducted was examining her activities. During the interview, she was not in custody. After the interview, Donaldson left the FBI office.

In her post-hearing memorandum, Donaldson argues that the Court must suppress her statements during the two interviews, for three reasons, to wit: 1) she was not provided a target letter before the interviews, as required by Department of Justice regulations; 2) she was not given the *Miranda* warnings before either interview; and 3) she was not advised of her rights before the interviews, as required by the IRS Manual. As a means of analysis, the Court will address Donaldson's three arguments in the above order.

## I. Target Letter

 Initially, Defendant argues that the Court must suppress the statements she made during the two interviews in Cheyenne, because she was a target of the investigation which has led to this prosecution and had not been provided a target letter by the Department of Justice, before those interviews. It is not questioned that Donaldson was not furnished a target letter before either interview. In addition, the Court will assume for present purposes that Donaldson was the target of the investigation before August 27, 2004, when the first interview occurred, and that she remained such a target when she was interviewed on the second occasion. The Court also assumes that Department of Justice regulations required that she be provided a target letter before being inter-

viewed. Nevertheless, the Court cannot agree that the failure to provide such a letter mandates the suppression of Donaldson's statements in either interview.

The decision of the Sixth Circuit in *United States v. Myers*, 123 F.3d 350 (6th Cir.), *cert. denied*, 522 U.S. 1020, 118 S.Ct. 611, 139 L.Ed.2d 498 (1997), demonstrates that the failure to provide Donaldson a target letter before she was interviewed does not mandate the suppression of the statements she made during those interviews. Therein, the defendant was stopped driving a car, because its registration had expired. Additionally, officers discovered that the defendant's driver's license had also expired. Nevertheless, they were willing to allow his passenger, Smith, to drive the car and merely to give the defendant a ticket. However, upon learning that an arrest warrant had been issued for Smith, the officers arrested him on the warrant, and the defendant for driving without a valid driver's license. When they searched Smith, officers discovered crack cocaine and cash. They also discovered controlled substances and a weapon under the back seat of the vehicle and that the defendant was carrying a significant amount of cash. The defendant was subsequently subpoenaed to testify before a Grand Jury investigating the matter; however, prior to the testimony, the Government failed to provide a target letter, allegedly in violation of the Department of Justice Manual. After he had been indicted, the defendant moved to suppress his Grand Jury testimony on the basis of that alleged violation. The District Court denied that motion, and a transcript of that testimony was read at the defendant's trial. Upon appeal, the Sixth Circuit agreed with the decision of the District Court to overrule the defendant's motion to suppress. As an initial matter,

---

4. The CID, however, was continuing to focus upon Davidson.

the Sixth Circuit noted that the Supreme Court had rejected the argument that the failure to provide a letter to the target of a Grand Jury investigation, informing him of his status, violates the suspect's constitutional rights. *Id.* at 354–55 (citing *United States v. Washington,* 431 U.S. 181, 189, 97 S.Ct. 1814, 52 L.Ed.2d 238 (1977)). In *Myers,* the Sixth Circuit also held that, even if the failure to provide a target letter violated the Department of Justice Manual, such a violation would not require the suppression of the defendant's Grand Jury testimony, given that the Department of Justice regulations did not create rights that were enforceable by criminal defendants. *Id.* at 355–56. *Accord, United States v. Wilson,* 413 F.3d 382, 389 (3rd Cir.2005) (and cases cited therein).

In accordance with *Myers,* this Court concludes that the failure to provide a target letter to Donaldson before she was interviewed is not a ground for suppressing her statements.

## II. *Miranda*

■ Alternatively, Donaldson contends that the statements she made during the interviews must be suppressed, because she was not given the warnings required by *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), before being interviewed. As a means of analysis, the Court will initially set forth the standards it must apply whenever it rules upon a defendant's request to suppress her statements to law enforcement, because she was not given the *Miranda* warnings.

In *Miranda,* the Supreme Court announced a prophylactic rule requiring that a suspect be provided with certain warnings before being subjected to a custodial interrogation. The Court defined "custodial interrogation" as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action

in any significant way." 384 U.S. at 444, 86 S.Ct. 1602. *See also, Stansbury v. California,* 511 U.S. 318, 114 S.Ct. 1526, 128 L.Ed.2d 293 (1994); *Oregon v. Mathiason,* 429 U.S. 492, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977). Herein, since it could not be questioned that Donaldson was interrogated, the questioning violated *Miranda,* if she was in custody at the time. In determining whether an individual was in custody for purposes of *Miranda* warnings, a court must examine all of the circumstances surrounding the interrogation, but "the ultimate inquiry is simply whether there [was] a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." *California v. Beheler,* 463 U.S. 1121, 1125, 103 S.Ct. 3517, 77 L.Ed.2d 1275 (1983) (quoting *Mathiason, supra,* 429 U.S., at 495, 97 S.Ct. 711). *See also, Stansbury,* 511 U.S. at 322, 114 S.Ct. 1526. As the United States Supreme Court has instructed, "the only relevant inquiry is how a reasonable man in the suspect's shoes would have understood his situation." *Berkemer v. McCarty,* 468 U.S. 420, 442, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984). *Accord, United States v. Crossley,* 224 F.3d 847, 861 (6th Cir.2000); *United States v. Mahan,* 190 F.3d 416 (6th Cir.1999).

In *United States v. Salvo,* 133 F.3d 943, 948 (6th Cir.), *cert. denied,* 523 U.S. 1122, 118 S.Ct. 1805, 140 L.Ed.2d 943 (1998), the Sixth Circuit explained:

The Supreme Court has distinguished between "custodial interrogation" and the mere questioning of a suspect in a "coercive environment":

[A] noncustodial situation is not converted to one in which *Miranda* applies simply because a reviewing court concludes that, even in the absence of any formal arrest or restraint on freedom of movement, the questioning took place in a "coercive environment." Any interview of one suspected of a crime by a police officer will

have coercive aspects to it, simply by virtue of the fact that the police officer is part of a law enforcement system which may ultimately cause the suspect to be charged with a crime. But police officers are not required to administer *Miranda* warnings to everyone whom they question.

[*Oregon v. Mathiason*, 429 U.S. 492, 495, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977)]. *See also, United States v. Phillip*, 948 F.2d 241, 247 (6th Cir.1991), *cert. denied*, 504 U.S. 930, 112 S.Ct. 1994, 118 L.Ed.2d 590 (1992) ("Coercive environments not rising to the level of formal arrest … do not constitute custody within the meaning of *Miranda.*"); *United States v. Knox*, 839 F.2d 285, 291–292 (6th Cir.1988), *cert. denied*, 490 U.S. 1019, 109 S.Ct. 1742, 104 L.Ed.2d 179 (1989).

133 F.3d at 948. In *Salvo*, the Sixth Circuit indicated that when determining whether the defendant was in custody, the District Court may consider whether a reasonable person in the defendant's position would not have believed that he was free to go. *Id.* at 133–34. In *United States v. Ozuna*, 170 F.3d 654 (6th Cir. 1999), the Sixth Circuit indicated that the "free to go" standard must be applied with caution, since under some circumstances an individual, such as a motorist stopped by a police officer, will not be in custody even though he is not free to leave. *Id.* at 658 n. 3. The *Ozuna* court also stressed that since an objective standard must be applied to ascertain whether defendant was in custody, the subjective beliefs of the defendant and the interrogating officer are not dispositive. *Id.* at 658. *See also United States v. Galloway*, 316 F.3d 624 (6th Cir.2003)

In *United States v. Lawrence*, 1989 WL 153161 (6th Cir.1989), *cert. denied*, 494 U.S. 1019, 110 S.Ct. 1325, 108 L.Ed.2d 500

(1990), the Sixth Circuit held that when a defendant seeks to suppress his statements on the basis that he was not given *Miranda* warnings, he has the burden of proving by the preponderance of the evidence that he was entitled to those warnings, because he was subjected to a custodial interrogation. *Accord, United States v. Davis*, 792 F.2d 1299, 1309 (5th Cir.), *cert. denied*, 479 U.S. 964, 107 S.Ct. 464, 93 L.Ed.2d 409 (1986); *United States v. Charles*, 738 F.2d 686, 692 (5th Cir.1984); *United States v. Swanson*, 2006 WL 335849 (S.D.Ohio 2006).

Above, this Court has set forth its conclusions that Donaldson was not in custody during either interview. Stated somewhat differently, during neither interview was she subjected to a formal arrest, or was her freedom of movement restrained to the degree associated with a formal arrest. *Beheler*, 463 U.S. at 1125, 103 S.Ct. 3517. The Court now explains those conclusions and why the evidence cited by Donaldson has not caused it to reach a contrary conclusion.

Donaldson testified during the suppression hearing that, before the first interview, she received a telephone call, stating that she "needed to be at the FBI's office" and that she "needed to come answer some questions for them" about Davidson and his related company, Knab Mortgage. Transcript of February 10, 2006 Evidentiary Hearing (Doc. # 56) at 63. Donaldson appeared voluntarily at the Cheyenne FBI office on August 27, 2004, and was escorted to the interview room, where she met with Fanelli. That room is located directly off the waiting area of that office and is connected thereto by a door. During the interview, Donaldson was not placed under arrest or taken into custody. At the end of the interview, Fanelli presented a Grand Jury subpoena to Donaldson, which requested a handwriting exemplar from her.[5]

5. The subpoena was issued by a Grand Jury

in the Southern District of Ohio. Darragh had

The second interview of Donaldson occurred at the Cheyenne FBI office on June 25, 2005. Gross contacted Donaldson more than ten days before the interview, in order to schedule same, and Donaldson agreed to be interviewed in Cheyenne. As she had with the first interview, Donaldson appeared voluntarily. At the beginning of the interview, Gross told Donaldson that she was assisting the United States Attorney in a Grand Jury investigation of Davidson. During the interview, Donaldson was not subjected to psychological or physical coercion, nor was she arrested or taken into custody. In addition, she was free to move around and to leave, although she never expressed a desire to terminate the interview or to leave the interview room. Donaldson's interaction with Gross and Ferguson lasted about one and one-half hours. At its conclusion, Donaldson agreed to provide a written statement of any further details she was able to remember.

Donaldson concedes that she was not placed under arrest during either interview; however, she contends that she was in custody (i.e., her freedom of movement had been restrained to the degree associated with a formal arrest). In support of that proposition, she notes that law enforcement had control over the environment where the interviews occurred, given that they occurred in the interview room of the Cheyenne FBI office, which is not a public place. In addition, she points out that the second interview was conducted by two agents and that on each occasion she was escorted into the interview room. The evidence to which Donaldson points fails to convince this Court that she was in custody during either interview. In each instance, she was contacted by a federal law enforcement officer who invited her to come for an interview. On both occasions, she voluntarily came to the Cheyenne FBI office, where she was escorted into the interview room to be questioned. At the end of each day's proceedings, she was permitted to leave without hindrance.[6] There is simply no evidence that Donaldson was in any manner physically restrained or told that she had to stay until the questioning had been completed. Accordingly, the Court concludes that Donaldson's freedom of movement was not restrained during either interview to the degree associated with a formal arrest.

Moreover, the Supreme Court has held in indistinguishable cases that a defendant was not in custody under similar circumstances. In *California v. Beheler, supra,* the Supreme Court held that a suspect was not in custody, when he voluntarily came to the police station to be interviewed, was not placed under arrest, and was allowed to leave unhindered by police after the interview. Similarly, in *Oregon v. Mathiason,* 429 U.S. 492, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977), the Supreme Court concluded that the defendant, who had voluntarily come to a state police station in order to be interviewed, was not in custody for purposes of *Miranda,* even though the interview had occurred in an office behind closed doors. In reaching that conclusion, the Supreme Court rejected the holding of the Oregon Supreme Court that *Miranda* was applicable, because the interview had occurred in a coercive environment. The *Mathiason* Court wrote:

> Such a noncustodial situation is not converted to one in which *Miranda* applies simply because a reviewing court concludes that, even in the absence of any formal arrest or restraint on free-

---

provided the subpoena to Fanelli and asked him to serve it.

6. At the conclusion of the first interview, Donaldson gave a handwriting exemplar in response to the Grand Jury subpoena.

dom of movement, the questioning took place in a "coercive environment." Any interview of one suspected of a crime by a police officer will have coercive aspects to it, simply by virtue of the fact that the police officer is part of a law enforcement system which may ultimately cause the suspect to be charged with a crime. But police officers are not required to administer *Miranda* warnings to everyone whom they question. Nor is the requirement of warnings to be imposed simply because the questioning takes place in the station house, or because the questioned person is one whom the police suspect. *Miranda* warnings are required only where there has been such a restriction on a person's freedom as to render him "in custody." It was that sort of coercive environment to which *Miranda* by its terms was made applicable, and to which it is limited.

*Id.* at 495, 97 S.Ct. 711. Similarly, the fact that Donaldson was interviewed at an FBI office, behind closed doors and out of the view of the public, does not place her in custody for purposes of *Miranda*.[7]

Since Donaldson was not in custody during either interview, the failure to read her the *Miranda* warnings does not render her statements suppressible.

*III. IRS Manual*

 Finally, Donaldson argues that, even if she was not in custody during the interviews, the Court must suppress her

statements, because no one advised her of her rights before either interview, allegedly in violation of the requirements of the IRS Manual. Donaldson points out that this Manual requires a special agent of the CID to advise an individual of her custodial rights, before conducting a non-custodial interview, if she is "a subject of an investigation." Donaldson was not advised of those rights before either interview. This Court will assume for present purposes that Donaldson was a subject of an investigation when the two interviews occurred. Nevertheless, the Court cannot agree with Donaldson that the failure to advise her of her rights mandates the suppression of the statements she made during them.

As an initial matter, the first interview was conducted on August 27, 2004, solely by Fanelli, a special agent of the *FBI*, rather than of the *CID*. The provision in the IRS Manual upon which Donaldson relies does not remotely suggest that it is applicable to FBI agents.[8] Donaldson has cited no authority or principle of administrative law in support of the proposition that a regulation adopted by one department of the Executive Branch (the Treasury Department), which requires its employees to advise an individual of her rights under certain circumstances, will have the effect of requiring employees of another department of that Branch (the Department of Justice) to advise the individual of her rights, whenever the two departments act in concert. Indeed, such

---

**7.** Throughout the hearing and in her post-hearing submissions, Donaldson has attempted to establish that she was a target of the investigation involving Davidson, before the interviews. She has also repeatedly mentioned the Government's failure to inform her of that status before either interview. In *Stansbury v. California,* 511 U.S. 318, 114 S.Ct. 1526, 128 L.Ed.2d 293 (1994), the Supreme Court has held that "any inquiry into whether the interrogating officers have focused their suspicions upon the individual

being questioned (assuming those suspicions remain undisclosed) is not relevant for purposes of Miranda." *Id.* at 324, 114 S.Ct. 1526. Therefore, the Court rejects any suggestion that Donaldson's status as a target of the investigation, assuming she was such a target, has any applicability on the question of whether she was in custody.

**8.** Donaldson has not argued that Department of Justice regulations impose similar requirements on special agents of the FBI.

a principle of administrative law would do nothing but lead to confusion. Donaldson has assumed, without citation of authority, that the joint operation between the IRS and the FBI would render the regulations adopted by the IRS applicable to the employees of the FBI. She has not, however, explained why Department of Justice regulations, which do not require agents to advise a suspect of her rights, would be equally *in* applicable. The net result of adopting Donaldson's premise would, therefore, be to sow confusion, requiring agents to guess which agency's regulations are applicable. Accordingly, the Court concludes that Donaldson's statements to Fanelli on August 27, 2004, cannot be suppressed, even if violation of the IRS Manual, by a special agent of the *CID*, could result in suppression.

■ Of course, Gross, a special agent in the CID, participated in the second interview. The Court will assume that the joint participation in an interview by special agents of the CID and the FBI (as opposed to both agencies being involved in an investigation) renders the IRS Manual applicable to the second interview, even though Gross testified that the second interview was an "FBI interview." Transcript of February 10, 2006 Evidentiary Hearing (Doc. # 56) at 14.[9] Nevertheless, the Court cannot conclude that the failure to advise Donaldson of her rights before that interview is the basis for suppressing her statements.

In *United States v. Caceres*, 440 U.S. 741, 99 S.Ct. 1465, 59 L.Ed.2d 733 (1979), the defendant, who had been charged with attempting to bribe an IRS agent, moved to suppress tape recordings of his three face-to-face conversations with that agent. Those conversations had been monitored and recorded, as a result of the agent's wearing a concealed transmitting device. Although not challenging the constitutionality of recording his conversations with the agent, the defendant argued that the tapes had been obtained as a result of the violation of IRS regulations. The District Court found that recording the conversations between the agent and the defendant violated IRS regulations, under which approval from an appropriate official in the Justice Department had to be obtained before conversations could be recorded. As a consequence, the District Court suppressed all three tape recordings. With respect to two of the recordings, the Ninth Circuit agreed that two of the tapes had been obtained as a result of the violation of IRS regulations and affirmed their suppression.[10] Upon further appeal, the Supreme Court concluded that suppression of the tapes was an unwarranted remedy for the violation of regulations governing the internal workings of an executive agency, given that neither the Constitution nor any federal statute imposed any sort of similar limitation upon the IRS. The Supreme Court, thus, refused to adopt a per se rule that a violation of IRS regulations constituted a deprivation of due process. The *Caceres* Court indicated that due process could be deprived when an individual has relied upon a regulation and suffered prejudice as a result of a violation of the regulation by the IRS. *Id.* at 752–53, 99 S.Ct. 1465. Herein, however, Donaldson did not present evidence that she relied upon the provision in the IRS Manual, requiring that a suspect be advised of her rights under certain circumstances.

In *United States v. McKee*, 192 F.3d 535 (6th Cir.1999), the Sixth Circuit addressed an alleged violation of the provision of IRS

---

9. Gross did, however, ask the majority of the questions.

10. The Ninth Circuit concluded that the third tape had not been obtained in violation of the regulations.

regulations which requires an IRS revenue agent to cease his or her activity and refer the matter to the CID, whenever the agent discovers a firm indication of fraud by the taxpayer. The defendant alleged that the revenue agent had violated that regulation and had requested the suppression of the evidence obtained by the Government as a result of that violation. The District Court denied that motion, and, after being convicted, the defendant raised that argument on appeal. The Sixth Circuit initially examined the question of whether a taxpayer can challenge her conviction on the basis of noncompliance with provisions of the IRS Manual, writing:

> At first glance, our precedent suggests not. *See Valen Mfg. Co. v. United States,* 90 F.3d 1190, 1194 (6th Cir.1996). In that case, the taxpayer argued that the assessments levied against him for delinquent filings were invalid because the Manual suggested that his conduct was excused. We rejected this argument as meritless, and noted that the "provisions of the [IRS's] manual ... only govern the internal affairs of the Internal Revenue Service. They do not have the force and effect of law." *Id.* (quotations and citations omitted). This rule is based on the view that the Manual was generally created for the agency's own internal administration, and not for the protection of taxpayers. *See, e. g., United States v. Mapp,* 561 F.2d 685, 690 (7th Cir.1977); *United States v. Lockyer,* 448 F.2d 417, 420–21 (10th Cir. 1971). Additionally, this rule applies to both civil and criminal cases. *See United States v. Marra,* 481 F.2d 1196, 1204 (6th Cir.1973) (expressing doubt that internal IRS handbook guidelines affords

substantive rights to taxpayers); *United States v. Tenzer,* 127 F.3d 222, 228 (2d Cir.1997) (internal IRS policy was not "directed to public nor publicized"), *cert. denied,* 523 U.S. 1096, 118 S.Ct. 1580, 140 L.Ed.2d 795 (1998); *United States v. Michaud,* 860 F.2d 495, 499 (1st Cir. 1988) (Breyer, J.) ("the law is clear that an IRS agent's violation of a regulation ... does not prevent prosecution and conviction of a defendant, nor does it require suppression of evidence"); *Groder v. United States,* 816 F.2d 139, 142 (4th Cir.1987) (Manual provision "confers no substantive rights or privileges upon taxpayers").

*Id.* at 540. The Sixth Circuit concluded, however, that the *Caceres* Court had left open the possibility that a violation of an IRS regulation would require the suppression of evidence, if " 'compliance with the regulation is mandated by the Constitution or federal law.' " *Id.* at 541 (quoting *Caceres,* 440 U.S. at 749, 99 S.Ct. 1465).[11]

In accordance with *McKee,* therefore, this Court must initially decide whether the Constitution or federal law mandate compliance with the IRS regulation requiring that the subject of an investigation be advised of her rights, before a non-custodial interrogation. Quite simply, that question must be answered in the negative. In *Miranda,* the Supreme Court held that warning an individual of her rights was constitutionally required when she was subjected to a custodial interrogation, which was defined as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." 384 U.S. at 444, 86 S.Ct. 1602.[12] No subsequent decision by the

---

**11.** In *McKee,* the Sixth Circuit ultimately concluded that the regulation in question had been adopted to protect to protect unspecified constitutional rights of taxpayers, but that the regulation had not been violated.

**12.** Any lingering doubt that *Miranda* is constitutionally mandated was resolved by the Supreme Court in *Dickerson v. United States,* 530 U.S. 428, 120 S.Ct. 2326, 147 L.Ed.2d 405 (2000).

Supreme Court or the Sixth Circuit has suggested that the constitution mandates advising someone of her rights, before conducting a non-custodial interrogation. On the contrary, the Supreme Court held in *Beckwith v. United States,* 425 U.S. 341, 96 S.Ct. 1612, 48 L.Ed.2d 1 (1976) that the failure of an IRS agent to provide *Miranda* warnings to Beckwith, before conducting a non-custodial interrogation, had not violated his constitutional rights, because *Miranda* was applicable only when an individual was subjected to a custodial interrogation. *See also, Mathiason, supra.* Moreover, if warning an individual of her rights were constitutionally mandated whenever she was interrogated, it would be difficult understand why courts have spent so much wasted effort, over the last 40 years, litigating the question of whether the defendant, who had been questioned without benefit of *Miranda* warnings, was in custody at the time.

Accordingly, assuming for sake of argument that Gross violated the IRS Manual by interviewing Donaldson without having advised her of her rights, the Court declines to suppress that Defendant's statements as a result of the assumed violation.

Based upon the foregoing, the Court overrules Donaldson's Motion to Suppress Statements (Doc. # 39).

Counsel of record will note that a telephone conference call will be had, between the Court and counsel, beginning at 8:30 a.m., on Friday, June 30, 2006, for the purpose of determining a trial date and other dates leading to the resolution of this litigation and of determining whether the Defendant McWhirter should be tried separately from or together with his Co–Defendants.