NOT RECOMMENDED FOR PUBLICATION
File Name: 15a0818n.06

FILED
Dec 15, 2015
DEBORAH S. HUNT, Clerk

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

MAURICE S. VAUGHN,   )
                     )
    Plaintiff-Appellant,   )
                     )
v.                   )   ON APPEAL FROM THE
                     )   UNITED STATES DISTRICT
                     )   COURT FOR THE
UNITED STATES OF AMERICA,   )   NORTHERN DISTRICT OF
                     )   OHIO
    Defendant-Appellee.   )
                     )
                     )

BEFORE:   COLE, Chief Judge; MERRITT and BATCHELDER, Circuit Judges

ALICE M. BATCHELDER, Circuit Judge.   Maurice Vaughn is a former major league baseball player who is facing tax penalties under 26 U.S.C. § 6651(a)(1). From 2004 to 2008, Vaughn entrusted a financial manager and an accountant with the tasks of filing and paying his taxes. Instead of fulfilling these tasks, they embezzled millions of dollars from his bank accounts and left him with a significant unpaid tax liability. But in spite of these unfortunate circumstances, Vaughn's statutory duty is non-delegable and is not excused because of the felonious actions of his financial agents. Because the circumstances that led to Vaughn's late filing and payment were under his control and subject to his oversight, he does not satisfy the "reasonable cause" exception to the penalties in § 6651(a)(1). Accordingly, this court AFFIRMS the district court's grant of summary judgment for the United States.

**I.**

The facts of this case are straightforward and undisputed. Maurice "Mo" Vaughn was a major league baseball player from 1991 to 2003. [R. 23 at Pg. ID# 180.] In May 2004, he hired Ra Shonda Kay Marshall and her company, RKM Business Services, Inc., to manage his financial affairs, invest his money, pay his taxes, pay his bills, and allocate funds for his immediate use. [*Id.* at 181.] Vaughn gave expansive powers to Marshall, including a durable power of attorney but the arrangement was subject to immediate revocation by Vaughn for any reason. [*Id.*] Vaughn also hired a tax accountant, David Krebs of CPA Advisory Group, Inc., to advise and assist in the preparation and filing of his tax returns. [R. 23 at Pg. ID# 181.] Vaughn continued with this arrangement until late 2008. [*Id.* at 182.]

Vaughn had two bank accounts—one personal account and one business account for Mo Vaughn Investments, LLC. [*Id.* at 181–82.] Vaughn deposited his income in these accounts, and Marshall was the sole signatory on both accounts. [*Id.*] As such, Marshall was responsible for paying all of Vaughn's bills, giving him a monthly budget, and paying his taxes. [*Id.*] In 2004, 2005, and 2006, Marshall properly filed Vaughn's tax returns, but only the 2004 and 2005 taxes were properly paid. [*Id.* at 181–83.] In 2007, Marshall neither filed nor paid Vaughn's taxes. [*Id.*]

Sometime late in 2008, Vaughn decided to manage his financial affairs on his own, and he terminated his arrangements with both Marshall and Krebs. [*Id.* at 182.] In the course of reviewing his bank statements, Vaughn discovered that Marshall had been cheating him for years and embezzling large sums of money from his accounts. Rather than investing Vaughn's money, growing his portfolio, and paying his taxes, Marshall was stealing his money, draining his portfolio, and failing to pay his taxes. [*Id.* at 182–84.] In fact, at the time Vaughn's 2007 taxes

were due, his bank accounts were so depleted that he did not even have enough money to cover his tax liability. [*Id.* at 183–84.] Vaughn sued Marshall and RKM Business Services, [*Id.* at 184–85] and currently has outstanding judgments against them for $1.5 million and $3.5 million, respectively. [R. 24-3 at Pg. ID# 232–34; R. 24-4 at Pg. ID# 235–36.]

Vaughn filed the instant case in an effort to recover the late penalties assessed against him by the IRS under 26 U.S.C. § 6651(a)(1) for his 2006 taxes and 2007 taxes. [R.27 at Pg. ID#342.] Because he did not properly exhaust his administrative remedies with regard to the 2006 taxes, the district court dismissed that claim. [*Id.*] But the court considered the claim regarding the 2007 taxes, and granted summary judgment to the United States. [*Id.* at 342, 349.] Vaughn appealed.

## II.

"This court reviews the grant of summary judgment *de novo* using the same legal standard employed by the district court. Consequently, summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Valen Mfg. Co. v. United States*, 90 F.3d 1190, 1191 (6th Cir. 1996) (citations omitted). The facts of this case are undisputed. At issue here is whether Vaughn falls within the "reasonable cause" exception to the tax penalties that have been assessed against him under 26 U.S.C. § 6651(a)(1).

## III.

According to 26 U.S.C. § 6651(a)(1), a taxpayer who fails to file his return by "the date prescribed therefor" will be subject to certain penalties, "unless it is shown that such failure is due to reasonable cause and not due to willful neglect." Vaughn advances two basic arguments as to why he meets this "reasonable cause" exception: (1) because he used ordinary business

prudence and care in the selection and use of agents to file and pay his taxes, he should not be responsible for his agents' violating his specific instructions and disregarding their fiduciary duties; and (2) because his agents had the unfettered power to file and pay his taxes, their fraud and embezzlement left him unable to file and pay. Neither argument has merit. Vaughn did not have reasonable cause for the untimely filing and payment of his taxes, and therefore he is liable for penalties under § 6651(a)(1).

In *United States v. Boyle*, the Supreme Court specifically addressed the issue of penalties assessed against a taxpayer for his agent's failure to file and pay his taxes. 469 U.S. 241 (1985). In explaining the "reasonable cause" exception, the Court noted that the Treasury Regulations require a taxpayer to "show that he exercised *ordinary business care and prudence* and was nevertheless *unable to file* the return within the prescribed time." *Id.* (emphases added) (internal quotation marks omitted); *see* 26 CFR § 301.6651-1(c)(1). Addressing the question of whether one could satisfy the "reasonable cause" exception by relying on a professional agent to complete and file one's taxes, the *Boyle* Court said that "[t]he time has come for a rule with as 'bright' a line as can be drawn consistent with the statute and implementing regulations." *Boyle*, 469 U.S. at 248. The Court went on to hold:

> Congress has placed the burden of prompt filing on the executor, not on some agent or employee of the executor. The duty is fixed and clear; Congress intended to place upon the taxpayer an obligation to ascertain the statutory deadline and then to meet that deadline, except in a very narrow range of situations. Engaging an attorney to assist in the probate proceedings is plainly an exercise of the "ordinary business care and prudence" prescribed by the regulations, but that does not provide an answer to the question we face here. To say that it was "reasonable" for the executor to *assume* that the attorney would comply with the statute may resolve the matter as between them, but not with respect to the executor's obligations under the statute. Congress has charged the executor with an unambiguous, precisely defined duty to file the return within nine months; extensions are granted fairly routinely. That the attorney, as the executor's agent, was expected to attend to the matter does not relieve the principal of his duty to comply with the statute.

. . . .

It requires no special training or effort to ascertain a deadline and make sure that it is met. The failure to make a timely filing of a tax return is not excused by the taxpayer's reliance on an agent, and such reliance is not "reasonable cause" for a late filing under § 6651(a)(1).

*Id.* at 249–50, 52.

*Boyle*'s bright-line rule easily disposes of Vaughn's first argument. As *Boyle* makes clear, Vaughn's using ordinary business care and prudence in selecting and dealing with his financial agents does not absolve him from his statutory duty to make sure that his taxes were properly filed and paid. Nor does it matter that his agents violated his specific instructions and disregarded their fiduciary duties. These facts are pertinent with respect to Vaughn's relationship to Marshall, RKM, and Krebs, but not with respect to his relationship to the Internal Revenue Service ("IRS").

It is also helpful to note that the *Boyle* Court distinguished between relying on an attorney or accountant for *advice* regarding one's taxes and relying on an attorney or accountant for the actual *filing* of one's taxes:

When an accountant or attorney *advises* a taxpayer on a matter of tax law . . . it is reasonable for the taxpayer to rely on that advice. Most taxpayers are not competent to discern error in the substantive advice of an accountant or attorney. . . . By contrast, one does not have to be a tax expert to know that tax returns have fixed filing dates and that taxes must be paid when they are due. In short, tax returns imply deadlines. Reliance by a lay person on a lawyer is of course common; but that reliance cannot function as a substitute for compliance with an unambiguous statute.

*Id.* at 251. Taxpayers are not required to be experts on the tax code, but they are expected to know that they must file a return and pay their taxes. Vaughn is not facing penalties from the IRS because he relied on the *advice* of his agents; rather, he is facing penalties because he relied on them to complete and file his tax returns.

This leads to Vaughn's next line of argument regarding his ability to file and pay his taxes. Vaughn asserts that the nature of his agreement with his agents and the nature of their malfeasance rendered him unable to file and pay his tax returns properly. In support of this argument, he cites *Matter of American Biomaterials Corp.*, 954 F.2d 919 (3rd Cir. 1992). In *Biomaterials*, two corporate officers were discovered defrauding their corporation, failing to file and pay its taxes, and embezzling corporate funds. *Id.* at 920–21. These officers were the CEO/Chairman of the Board and CFO/Treasurer of the corporation—"the only officers . . . with the responsibility to file tax returns and ensure payment." *Id.* at 922. The court held that the corporation itself was not vicariously liable for the failures of its officers or for the penalties resulting from those failures. *Id.* at 927. A corporation can act only through its agents and employees. *Id.* at 923. So, when the very corporate officers responsible for filing and paying the corporation's taxes engaged in fraud and embezzlement instead, the corporation was suddenly devoid of an agent or employee through which it might act to file and pay its taxes. *Id.* at 927. In this way and to this extent, the corporate officers' criminal actions left the corporation unable to pay its taxes, and the corporation was not held liable for penalties. *Id.*

Vaughn argues that, as was the case in *Biomaterials*, the malfeasance of his agents rendered him unable to pay his taxes in spite of his ordinary business care and prudence, and thus the penalties should be excused. But Vaughn's interpretation of *Biomaterials* is flawed. The court in *Biomaterials* did not create a blanket rule absolving corporations from liability when they are disabled by derelict officers. *Id.* Notwithstanding the actions of its officers, a corporation is not entitled to the "reasonable cause" exception to § 6651(a)(1) if it "has lax internal controls or fails to secure competent external auditors to ensure the filing of timely tax returns and deposit and payment of taxes." *Id.* In other words, if a corporation sets itself up for

such a disability, it cannot use that disability to avoid tax penalties. Thus, consistent with *Biomaterials*, Vaughn may be held liable for tax penalties on the basis of his lax internal controls and failure to provide adequate safeguards to ensure that his taxes were properly filed and paid.

And the factual dissimilarities between Vaughn and the corporation in *Biomaterials* serve to buttress this point. Whereas there were no other officers in that corporation who would have had legitimate power and authority to oversee and ensure the filing and payment of the company's taxes, Vaughn had both the power and the authority to oversee and ensure the filing and payment of his own taxes. That difference alone makes *Biomaterials* largely inapposite here.

More importantly, Vaughn's reading of *Biomaterials* is inconsistent with *Boyle* and other precedent. As noted by the Ninth Circuit, "the [*Boyle*] Court expressly distinguished the question of the taxpayer's misplaced reliance on an agent to perform a known duty from the question of the taxpayer's disability." *Conklin Bros. of Santa Rosa, Inc. v. United States*, 986 F.2d 315, 318 (9th Cir. 1993) (internal quotation marks omitted). More specifically, *Boyle* states:

> The administrative regulations and practices exempt late filings from the penalty when the tardiness results from postal delays, illness, and other factors largely beyond the taxpayer's control. . . . This principle might well cover a filing default by a taxpayer who relied on an attorney or accountant because the taxpayer was, for some reason, incapable by objective standards of meeting the criteria of "ordinary business care and prudence." In that situation, however, the disability alone could well be an acceptable excuse for a late filing.

*Boyle*, 469 U.S. at 248 n.6. This court has previously interpreted this footnote to mean that "such disability must result from circumstances beyond the taxpayer's control . . . not simply the taxpayer's *reliance* on an agent employed by the taxpayer." *Valen Mfg. Co.*, 90 F.3d at 1193 (internal quotation marks omitted). This directly defeats Vaughn's argument that Marshall's embezzlement disabled him because he did not retain sufficient funds to pay his taxes at the time

that they were due.  [Appellant's Br. at 19, 22.]  There is nothing in *Boyle* that indicates that reliance on an agent suddenly becomes "reasonable cause" when that reliance leads to insufficient funds to pay one's taxes, and indeed, this argument misses the entire point of *Boyle*.  Vaughn is attempting to conflate his disability with his reliance on Marshall and Krebs—which is the very thing that *Boyle* "expressly distinguished."  *Conklin Bros.* 986 F.2d at 318 (internal quotation marks omitted).  The same oversight that would have enabled him to know that his agents were not filing and paying his taxes would also have enabled him to stop them from emptying his coffers.

Again, according to *Boyle*, a disability is something that is beyond the taxpayer's possible control and oversight, not something that occurs under his authorization and subject to his control.  *Boyle*, 469 U.S. at 248 n.6.  Hence, the proper question is whether Vaughn had an intrinsic objective inability to meet his tax liabilities or whether he brought that inability on himself by failing to exercise any oversight and ensure that his taxes were filed and paid.  When the issue is framed this way, *Conklin Bros.* is directly analogous:

> In *Biomaterials*, the criminal conduct committed by corporate officers and the Chairman of the Board of Directors was beyond the corporation's control because they were the control people in the corporate structure.  Supervision over such people was not possible.  In this instance, Conklin had control over Stornetta.  She was a manager/controller whose actions were subject to being supervised by Bowers, Conklin's president and majority shareholder, and by Conklin's outside accountants.

*Conklin Bros.*, 986 F.2d at 318.  Since oversight was possible and feasible here, this case is much closer to *Conklin Bros.* than *Biomaterials*.

This perspective is reinforced by our rationale in *Valen Mfg. Co.*  In that case, we specifically noted that there are two reasons why a disability should be narrowly construed as something beyond the taxpayer's actual control.  *Valen Mfg. Co.*, 90 F.3d at 1193–94.  First, as

stated in *Boyle*, "a taxpayer should not be penalized for circumstances beyond his control." *Id.* at 1193 (quoting *Boyle*, 469 U.S. at 248 n.6). And second,

> insisting that any disability forced upon a taxpayer result from a force beyond the taxpayer's control . . . encourage[s] compliance with our nation's self-reporting tax system. Forgiveness of penalty assessments levied against taxpayers who could exert greater controls and exercise greater levels of personal responsibility would only encourage late filings and payments to the IRS.

*Id.* at 1194. Here, the circumstances were not beyond Vaughn's control because he retained the absolute right to revoke Marshall's powers at any time and for any reason. [R. at 24-1 at Pg. ID# 192.] He knew that he owed taxes. He knew that there was a deadline for such taxes to be filed and paid. But he failed to ensure that these responsibilities were fulfilled by his financial agents. This is not a penalty for something beyond his control; it is a penalty for his own immediate failure.

## IV.

For these reasons, Vaughn does not satisfy the requirements of the "reasonable cause" exception in 26 U.S.C. § 6651(a)(1). We AFFIRM the judgment of the district court.