NOT RECOMMENDED FOR PUBLICATION
File Name: 16a0545n.06

No. 15-3095

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

JANICE C. SPECHT and JON HOFFHEIMER, Co-
Fiduciaries of the Estate of Virginia L. Escher,

    Plaintiffs-Appellants,

v.

UNITED STATES OF AMERICA,

    Defendant-Appellee.

)
)
)
)
)
)
)
)
)
)
)

FILED
Sep 22, 2016
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE SOUTHERN
DISTRICT OF OHIO

---

**BEFORE: KEITH, McKEAGUE, and WHITE, Circuit Judges.**

**HELENE N. WHITE, Circuit Judge.** The Internal Revenue Service assessed penalties

and interest on the penalties totaling $1,189,261.38 against the estate of Virginia L. Escher

("Estate") for its failure to timely file its tax return and pay its tax liability pursuant to 26 U.S.C.

§ 6651(a)(1) and (a)(2). The Estate paid the penalties and interest under protest and brought this

action to recover the amount paid. Finding that the Estate showed neither reasonable cause nor

an absence of willful neglect to excuse the late filing and payment, the district court granted the

government's motion for summary judgment. We **AFFIRM.**

**I. Background**

The factual background of this case is largely undisputed. Virginia Escher died on

December 30, 2008, leaving an estate valued at approximately $12,506,462. Eight months

before her death, Escher, accompanied by her cousin, co-plaintiff-appellant Janice Specht, met

with attorney Mary Backsman to execute Escher's will. Backsman had over fifty years'

experience in estate planning. During this meeting, Specht agreed to be the executor of Escher's

estate and witnessed her will. Specht was seventy-three years old at the time of the meeting, had no formal education after graduating from high school, had never served as an executor, and had never been in an attorney's office prior to witnessing Escher's will.

After Escher's death, Specht retained Backsman to represent the Estate. Unbeknownst to Specht, Backsman was suffering from brain cancer, and her competency was deteriorating. In January 2009, Backsman informed Specht that the Estate owed approximately $6,000,000 in federal estate taxes, and that the Estate would need to liquidate its shares in United Parcel Service, Inc. ("UPS"), in order to pay the liability. Backsman informed Specht that the estate taxes were due nine months following Escher's death, on September 30, 2009. Backsman also suggested that her law firm could pay the liability on the Estate's behalf and seek reimbursement later.

On February 9, 2009, Specht signed two forms: the Application for Authority to Administer Estate and the Fiduciary's Acceptance. The latter document laid out Specht's duties as executor and included an attestation that Specht would "[f]ile all tax documents as required by law." R. 13-13, PID 160. Specht testified that although she probably did not understand what this form meant and did not know the meaning of "fiduciary," she did not ask Backsman to explain any part of the form to her before signing it. Specht also testified that she never thought to ensure that the tasks listed on the Fiduciary's Acceptance were completed. Specht was aware, however, based on her experience filing her personal income taxes, that there might be a consequence if the estate taxes were filed late.

The parties agree that Specht relied heavily on Backsman. One fiduciary responsibility that Specht successfully completed was procuring tax releases from each of Escher's twenty-three separate banks. Other than this, it appears Specht's actions in executing the Estate were

limited to calling Backsman and inquiring about the status of the matter. Whenever Specht asked about the filing of the tax return and payment, Backsman assured her that an extension had been obtained. However, Specht did not ask for proof that an extension had been obtained, and Backsman's assurances turned out to be false—she had never even requested an extension.

Before the IRS filing deadline, Specht received four notices from the probate court informing her that the Estate had missed probate deadlines. Specht responded to the notices by calling Backsman and asking why she had missed the deadline. Specht then unquestioningly accepted Backsman's repeated response that she had obtained an extension and was handling the matter. No immediate consequences resulted from the missed probate deadlines. The September 30 IRS filing deadline came and passed without the Estate filing its tax return and paying the federal estate tax.

In the nine months following the IRS deadline, Specht received two more notices from the probate court informing her that Backsman failed to file a first accounting of the Estate's assets. Again, there were no immediate consequences from these notices as Backsman eventually filed the accounting. In July 2010, Specht received a call from friends of Escher who had also hired Backsman as an attorney for a family member's estate. They warned Specht that Backsman was incompetent, and told Specht they were seeking to have Backsman removed as co-executor of their family member's estate. After these calls, Specht scheduled a meeting with Backsman and again accepted Backsman's representation that the execution of the Estate was going smoothly. At this meeting, Backsman also had Specht sign a "blank paper" that Backsman stated would empower her to sell the Estate's UPS stock. R. 14, PID 191. Backsman later told Specht that she had sent a letter to UPS to initiate the sale of the stock.

On August 13, 2010, Specht received a notice from the Ohio Department of Taxation informing her that the Estate's Ohio state tax return was delinquent. Specht contacted Backsman, who, as usual, assured Specht all was fine. A month later, Specht received two additional notices from the Ohio Department of Taxation. Specht also received two additional calls from the other family imploring her to fire Backsman and recommending attorney Vincent Salinas as a suitable replacement. Specht contacted Salinas after each phone call, and Salinas agreed that she should fire Backsman.

On October 27, 2010, Specht called UPS and learned that the company never received a letter from Backsman regarding the sale of the Estate's UPS stock. This revelation caused Specht to finally fire Backsman, and she subsequently hired Salinas to represent the Estate. It was only then, a little over a year after the IRS filing deadline, that Specht learned that the return had not been filed and the taxes had not been paid. At that point, she was not surprised by the revelation. Within a month of hiring Salinas, the Estate successfully liquidated the UPS stock for a total of $8,251,715. On January 26, 2011, the Estate filed its federal tax return and paid its tax liability and interest.

The IRS assessed penalties against the Estate for failing to meet the September 30, 2009, deadline, which the Estate has since paid. The Ohio Department of Taxation, however, fully refunded the Estate's state penalties due to the hardship caused by Backsman's representation. The Estate settled a malpractice action against Backsman in 2012, and Backsman has since surrendered her law license.

In October, 2013, Specht and co-fiduciary Jon Hoffheimer brought this action on behalf of the Estate to recover $1,189,261.38 in penalties and interest on the penalties assessed against the Estate by the IRS. The district court granted the government's motion for summary

judgment, concluding that Specht's reliance on Backsman to file the tax return and pay the tax liability was not a reasonable cause for the missed deadline. The district court also found that Specht's failure to supervise Backsman, despite the many warning signs of Backsman's deficient performance, constituted willful neglect of her duty to file the tax return and tax payment.

## II. Analysis

Sections 6651(a)(1) and (2) of the Tax Code provide for the assessment of penalties for failure to file a tax return and failure to pay a tax liability, respectively. 26 U.S.C. § 6651(a)(1), (a)(2). These penalties are mandatory unless the failure is "due to reasonable cause and not due to willful neglect." *Id*. "To escape the penalty, the taxpayer bears the heavy burden of proving both (1) that the failure did not result from 'willful neglect,' and (2) that the failure was 'due to reasonable cause.'" *United States v. Boyle*, 469 U.S. 241, 245 (1985) (citing 26 U.S.C. § 6651(a)(1)). The Estate appeals the district court's grant of summary judgment, arguing that in light of Specht's age, education, and inexperience, her reliance on Backsman to file the tax return and pay the tax liability was a reasonable cause of the Estate's failure to meet the deadline. The Estate also argues that Specht's continued reliance on Backsman throughout the process did not constitute willful neglect of her duty to file the tax return and pay the tax liability.

## A. Standard of Review

We review a district court's grant of summary judgment de novo. *Ondo v. City of Cleveland*, 795 F.3d 597, 603 (6th Cir. 2015). "Summary judgment is appropriate if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." *Id*. All evidence should be viewed in the light most favorable to the nonmoving party, and all justifiable inferences should be drawn in favor of the nonmovant. *Id*. The question is whether the facts, when construed most favorably to the Estate, show that the Estate's failure to file its tax return

and pay its tax liability by the September 30, 2009, deadline was due to reasonable cause and not willful neglect.

## B. Reasonable Cause

Although the Tax Code does not define "reasonable cause," "the relevant Treasury Regulation calls on the taxpayer to demonstrate that [s]he exercised 'ordinary business care and prudence' but nevertheless was '*unable* to file the return within the prescribed time.'" *Boyle*, 469 U.S. at 245 (citing 26 CFR § 301.6651–1(c)(1)) (emphasis added). In *Boyle*, the leading case interpreting the Tax Code's "reasonable cause" exception[1], the Supreme Court declared that "[t]he time has come for a rule with as 'bright' a line as can be drawn . . . Congress has placed the burden of prompt filing on the executor, not on some agent or employee of the executor. . . . Congress intended to place upon the taxpayer an obligation to ascertain the statutory deadline and then to meet that deadline, except in a very narrow range of situations." *Id*. at 249–50. The Court explained that "tax returns imply deadlines. Reliance by a lay person on a lawyer is of course common; but that reliance cannot function as a substitute for compliance with an unambiguous statute." *Id*. at 251. The Court therefore concluded that "Congress has charged the executor with an unambiguous, precisely defined duty to file the return within nine months . . . That the attorney, as the executor's agent, was expected to attend to the matter does not relieve the principal of his duty to comply with the statute." *Id*. at 250.

The Estate attempts to distinguish *Boyle* on the basis that Specht was unqualified to be an executor, and her reliance on Backsman was thus more reasonable than the reliance in *Boyle* and our cases following *Boyle*. To be sure, the *Boyle* Court left open the possibility that an

---

[1] Though *Boyle* involved only § 6651(a)(1), this Court has found that the Supreme Court's construction of "reasonable cause" in *Boyle* also applies to § 6651(a)(2). *Valen Mfg. Co. v. United States*, 90 F.3d 1190, 1193 n.1 (6th Cir. 1996).

executor's qualifications might impact the reasonableness analysis, *id*. at 248 n.6, and Justice Brennan's concurrence includes taxpayers suffering from "senility, mental retardation or other causes" as examples of the "exceptional cases" that might render an individual unable to comply with the statutory deadlines. *Id*. at 255 (Brennan, J., concurring). But even Justice Brennan observed that the "overwhelming majority" of individuals are capable of complying with the deadlines. *Id*.

The Estate correctly notes that Specht was a less sophisticated executor than Robert Boyle, the executor in *Boyle*. Unlike Specht, Boyle was a businessman who had previously served as an executor, albeit twenty years before the events of that case. However, it was undisputed that Boyle "was not experienced in the field of federal estate taxation" and "relied on [his attorney] for instruction and guidance." *Id*. at 242. Although Boyle's attorney repeatedly assured him that the tax return would be filed on time, the attorney missed the deadline by three months due to a clerical error. *Id*. at 243. Similarly, Specht called Backsman numerous times and accepted her representations that the return would be filed and the liability paid on time. The Estate attempts to distinguish *Boyle* based on Backsman's tragic medical situation. But, the relevant question is whether the *executor*, not the attorney, was reasonable in missing the deadline. Here and in *Boyle*, the executors blindly relied on their attorney's representations that the filing would be completed on time, and in both situations the deadline was missed. Considering Specht's lack of oversight, the deadline would have been missed even if Backsman had been healthy but committed a clerical error of the kind that occurred in *Boyle*. Thus, *Boyle* is controlling.

Further, this court has reinforced the strict, bright-line rule of *Boyle*. In *Valen Mfg. Co. v. United States*, 90 F.3d 1190 (6th Cir. 1996), we considered whether an employee's active

concealment of her failure to file the company's tax return and pay its liabilities constituted reasonable cause for missing the statutory deadline. *Id.* at 1190–91. Applying *Boyle*, we concluded that, although the company "exercised ordinary business care and prudence," *id.* at 1194, it also had to demonstrate that it was "rendered unable to meet its responsibilities *despite* the exercise of such care and prudence." *Id.* at 1193 (emphasis in original). Finding that the employee's dishonesty was not a reasonable cause for missing the deadline, *Valen* clarified that the failure to pay "must result from circumstances beyond the taxpayer's control (e.g. postal delays, illness), not simply the 'taxpayer's *reliance* on an agent employed by the taxpayer.'" *Id.* (citing *Boyle*, 469 U.S. at 248 n.6) (emphasis in original). We explained that such a policy is "eminently reasonable," as "[f]orgiveness of penalty assessments levied against taxpayers who could exert greater controls and exercise greater levels of personal responsibility would only encourage late filings and payments to the IRS." *Id.* at 1194.

We noted that the company in *Valen* could not establish reasonable cause in part because it successfully completed its payments soon after discovering its employee's malfeasance. *Id.* at 1193. Here, although Specht may be a less sophisticated taxpayer than the company in *Valen* or the executor in *Boyle*, she nonetheless proved her ability to execute the estate. Soon after discovering that Backsman lied about initiating the sale of UPS stock, Specht successfully terminated her, hired Salinas as new counsel for the Estate, and, together with Salinas, filed the tax return and paid the outstanding liability. Thus, like the company in *Valen*, it was Specht's complete reliance on an unreliable agent, rather than circumstances beyond her control, that caused the late filing.

Finally, our recent unpublished decision in *Vaughn v. United States*, 635 F. App'x 216 (6th Cir. 2015), confirms *Boyle*'s bright-line rule. There, Mo Vaughn, a former Major League

Baseball player, hired a wealth-management firm and a tax accountant to manage his finances, prepare and file his tax returns, and make payments. *Vaughn*, 635 F. App'x at 218. Rather than pay Vaughn's taxes, Vaughn's financial manager embezzled millions of dollars from him. *Id*. Though we expressed sympathy for Vaughn, we affirmed the district court's grant of summary judgment to the government, concluding that "Vaughn's statutory duty is non-delegable and is not excused because of the felonious actions of his financial agents." *Id*. at 217. "Taxpayers are . . . expected to know that they must file a return and pay their taxes. . . . [Vaughn] is facing penalties because he relied on [his agents] to complete and file his tax returns." *Id*. at 220. Finally, we reiterated our interpretation of reasonable cause to mean "something that is beyond the taxpayer's possible control and oversight, not something that occurs under his authorization and subject to his control." *Id*. at 221.

The Estate points to only one case supporting its position, *Brown v. United States*, 630 F. Supp. 57 (M.D. Tenn. 1985), a thirty-one-year-old district-court case decided prior to *Valen* and *Vaughn* that the Estate concedes has never been cited as precedent. *Brown* involved a seventy-eight year old executor with a high school education and minimal experience in tax matters. *Id*. at 58. The executor hired an attorney to prepare and file the return, but the attorney was hospitalized two weeks prior to the filing deadline. *Id*. at 60. The district court found that the executor's age, health, and lack of experience constituted reasonable cause for his failure to timely file the tax return. *Id*. The Estate's reliance on this case is misplaced. The facts of *Brown* are distinguishable. Specifically, the court in *Brown* found that the executor was not reasonably capable of hiring a new attorney. *Id*. The court also found it important that the executor's health had been deteriorating for years, and that he had been "under the care of several doctors" while he was executor. *Id*. at 58. This advanced age and sickness, coupled with

the executor's inability to replace his attorney, support that the executor fell within the exceptional circumstances outlined in *Boyle*. In contrast, Specht demonstrated her ability to replace Backsman by hiring Salinas and ultimately filing the tax return and paying the liability. There is also no evidence suggesting that Specht suffers from any health problems.

We acknowledge that Specht was the victim of staggeringly inadequate legal counsel and there is no evidence of purposeful delay. However, although the circumstances are unfortunate, *Boyle*, *Valen*, and *Vaughn* make it clear that the duties to file a tax return and pay taxes are non-delegable and mere good-faith reliance does not constitute reasonable cause. Specht signed forms undertaking fiduciary obligations as the executor of the estate, and, despite knowing that her responsibilities were important, asked no questions about what her job entailed. Further, Specht knew the initial filing deadline was September 30, 2009, and understood that there would be consequences for a failure to timely file. She received multiple warnings regarding Backsman's deficient performance but took no steps to replace her until more than a year after the IRS deadline passed, instead relying solely on Backsman's assurances that an extension had been obtained. Although Backsman's representation was certainly an obstacle, Specht was not *unable* to file the return or pay the liability on behalf of the Estate. Specht could have more seriously considered the numerous warning signs of Backsman's incompetence and replaced her at any time; she has not shown reasonable cause to excuse the Estate's late filing and payment.

Because we affirm the grant of summary judgment on the basis that the Estate has not met its heavy burden of showing reasonable cause for its failure to file its tax return and pay its tax liability by the applicable deadline, we need not reach the question whether Specht willfully neglected her duty to do so.

## IV. Conclusion

For these reasons, we **AFFIRM** the district court's grant of summary judgment to the government.